GRAVES<br><em>vs</em><br>FORD.

## Graves *vs* Ford.

ERROR TO THE JEFFERSON CIRCUIT.

*Gaming. Qui tam action.*

CHIEF JUSTICE ROBERTSON delivered the opinion of the Court.

THE only judicial question in this case is, whether the loser of money bet on a Presidential election, has a legal right to sue for and recover it, in his own name, and for his own exclusive benefit, after payment.

The 5th section of an act of 1828, forfeits money bet on the election of certain officers, of whom a President of the United States is one—and authorizes a suit by the Commonwealth alone, or a *qui tam* action for the recovery of it.

DEBT.

Case 35.

<em>October 10.</em>

The case stated.

GRAVES
vs
FORD.

The 1st section of the act of 1833, (1 *Digest* 758,) to suppress "unlawful *gaming*," authorizes a suit for restitution by any person who has paid money lost on any "game, *hazard*, or sport"—and the 3d section of the same statute authorizes a better "on any game, sport, or pastime," to maintain the like action against a depository for money staked and unpaid to the winner.

*Hickman* vs *Littlepage*, 2 *Dana*, 384, referred to, and the statute of 1833 construed.

In the case of *Hickman* vs *Littlepage*, (2 *Dana*, 344,) this Court decided that the 3d section of the act of 1833, as to money staked on any "game, sport, or pastime," did not apply to money staked on the event of an election, which could be considered neither a game, sport, nor pastime; and therefore, also, of course decided that, as to such a stake, the act of 1828, which did not authorize a suit for restitution in the sole name of the depositor or for his exclusive use, was unaffected by the enactment of 1833. It does not necessarily follow, however, that the loser of money *paid* on a bet on an election, might not, in his own name and for his own use, maintain an action for restitution against the winner to whom the payment had been made, for as the 1st section of the act of 1833, authorizes *such* a suit for money lost and paid on any "game, *hazard*, or sport," it may be possible that this provision constructively embraces *all betting* on any doubtful or contingent event, even though the 3d section certainly does not.

But considering the avowed purpose and the general scope and phraseology of the entire statute, we are not inclined to concede to the word "hazard," in the 1st section, an import so comprehensive and incongruous: 1st, In its true philological sense, it means chance, luck, or accident, rather than mere uncertainty or contingency. 2ndly, The preamble shows that the object of the Legislature was to prevent *unlawful gaming*. 3rdly, All the various sections of the act, after the first section, apply clearly and exclusively to prohibited games, sports, or pastimes. 4thly, It would be absurd to suppose that the Legislature intended that a loser who had paid, should recover in cases of hazard, in which he could not reclaim his stake before it had been paid over to the winner. 5thly, Therefore the conclusion is almost inevitable that

the 1st and 3d sections contemplated the same species of betting, and that neither of them was intended to be more comprehensive than the other; and consequently, as the 3d section cannot embrace a bet on an election, the 1st does not. 6thly, If the 1st section embraces bets on elections, it includes all betting on any event whatever; and we cannot believe that such a statute as that of 1833 intended to denounce and prevent betting of all kinds, and *merely as such*, and especially as the terms of the enactment are needlessly specific and very inappropriate for such an universal and simple end. We should rather suppose that the legislative purpose was only to discourage that pestilent and multiform betting on those *games, sports,* and *pastimes,* which tend to idleness and vice, by seducing the passions and misdirecting their habitual influence. 7thly, And consequently "hazard" should be understood, *ejusdem generis,* as importing some chance or risk like that of its associate terms, "game," "sport," "pastime."

Our *conclusion,* therefore, is that the act of 1828 is untouched by that of 1833—and consequently, that if the plaintiff in this action could recover at all, he can do so in a *qui tam* suit only.

Wherefore, as the judgment in this case is inconsistent with the foregoing conclusion, that judgment must be reversed and the cause remanded, with instructions to sustain the demurrer to the evidence.

*Duncan* for plaintiff: *Evans* for defendant.

One who bets & loses money on a. Presidential election has no right to sue for and recover it back in his own name, if at all it is in a *qui tam* action.